# SUPREME COURT OF THE UNITED STATES

## GHP MANAGEMENT CORPORATION, ET AL. *v.* CITY OF LOS ANGELES, CALIFORNIA, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 24–435.   Decided June 30, 2025

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, with whom JUSTICE GORSUCH joins, dissenting from the denial of certiorari.

During the COVID–19 pandemic, the City of Los Angeles enacted an eviction moratorium that "'effectively preclude[d] residential evictions.'" 2022 WL 17069822, *1 (CD Cal., Nov. 17, 2022). Among other restrictions, this policy barred landlords from evicting tenants "due to COVID-related nonpayment of rent." *Ibid.* Petitioners—13 owners of Los Angeles apartment buildings and their shared management company—sued the city, arguing that the moratorium effected a *per se* physical taking, in violation of the Takings Clause's prohibition on takings of "private property . . . for public use, without just compensation." U. S. Const., Amdt. 5. I would grant review of the question whether a policy barring landlords from evicting tenants for the nonpayment of rent effects a physical taking under the Takings Clause.

This question is the subject of an acknowledged Circuit split. The Eighth and Federal Circuits have held that a bar on evictions for the nonpayment of rent qualifies as a physical taking, while the Ninth Circuit has held that it does not. Compare *Darby Development Co.* v. *United States*, 112 F. 4th 1017, 1034–1035 (CA Fed. 2024), and *Heights Apartments, LLC* v. *Walz*, 30 F. 4th 720, 733 (CA8 2022), with 2024 WL 2795190, *1 (CA9, May 31, 2024). In issuing the decision below, the Ninth Circuit expressly acknowledged

this split.  See *ibid.*, n. 2.

This Circuit split stems from confusion about how to reconcile two of our precedents.  The Ninth Circuit treated as controlling this Court's decision in *Yee* v. *Escondido*, 503 U. S. 519 (1992), which held that a statute did not effect a physical taking when it allowed mobile home owners to evict tenants only after an onerous delay.  *Id.*, at 527–528.  The *Yee* Court explained that "[t]he government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land," whereas the landlord petitioners in *Yee* had voluntarily contracted with their tenants and were accordingly subject to laws "regulat[ing their] *use* of their land by regulating the relationship between landlord and tenant."  *Ibid.*  Thus, in the Ninth Circuit's view, the Los Angeles eviction moratorium did not "effect a taking" because petitioners had already "opened their property to occupation by tenants."  2024 WL 2795190, *1.

By contrast, the Eighth and Federal Circuits looked to our more recent decision in *Cedar Point Nursery* v. *Hassid*, 594 U. S. 139 (2021).  There, we held that a law requiring agricultural employers to allow labor organizers onto their property constituted a physical taking because it "appropriate[d] for the enjoyment of third parties the owners' right to exclude."  *Id.*, at 149.  And, the Eighth and Federal Circuits reasoned, if "forcing property owners to occasionally let union organizers on their property infringes their right to exclude," it follows that "forcing them to house non-rent-paying tenants (by removing their ability to evict)" does too.  *Darby*, 112 F. 4th, at 1035; accord, *Heights Apartments*, 30 F. 4th, at 733.

Because "[w]e created this confusion," we have an obligation to fix it.  *Gee* v. *Planned Parenthood of Gulf Coast, Inc.*, 586 U. S. 1057, 1059 (2018) (THOMAS, J., dissenting from denial of certiorari).  That obligation is particularly strong here, as there is good reason to think that the Ninth Circuit

erred. Under the logic of *Cedar Point*, and our Takings Clause doctrine more generally, an eviction moratorium would plainly seem to interfere with a landlord's right to exclude. See *Alabama Assn. of Realtors* v. *Department of Health and Human Servs.*, 594 U. S. 758, 765 (2021) (*per curiam*) ("[P]reventing [landlords] from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude"). Nor does *Yee* dictate otherwise: Although the statute there constrained landlords' right to evict, it was not "an outright prohibition on evictions for nonpayment of rent." *Darby*, 112 F. 4th, at 1035; see 503 U. S., at 527–528.

Finally, this issue is important and recurring. Given the sheer number of landlords and tenants, any eviction-moratorium statute stands to affect countless parties. And, the end of the COVID–19 pandemic has not diminished the importance of this issue. Municipalities continue to enact eviction moratoria in the wake of other emergencies. See, *e.g.*, San Diego Cty., Cal., Ordinance No. 10936, §2 (N. S.) (2025) (codified at San Diego Cty., Cal., Code of Regulatory Ordinances tit. 3, div. 1, ch. 5, §31.503); Statement of Proceedings for the Public Hearing Meeting of the Board of Supervisors of the Cty. of Los Angeles 7–8 (Feb. 25, 2025), https://file.lacounty.gov/SDSInter/bos/sop/1178834_022525.pdf. Even if it were otherwise, we would do well to clarify our case law now, rather than in the heat of the next national emergency.

＊　＊　＊

This case meets all of our usual criteria for granting certiorari, and it does not contain any impediments that would hamper our review. The Court nevertheless denies certiorari, leaving in place confusion on a significant issue, and leaving petitioners without a chance to obtain the relief to which they are likely entitled. I respectfully dissent.